IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

TOBY TRUSDALE,

    Petitioner,

v.                                                              Civil Action No. 3:13cv92
                                                               (Judge Groh)

TERRY O'BRIEN, Warden,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On August 13, 2013, the *pro se* petitioner, an inmate formerly incarcerated at USP Hazelton[1] in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, seeking to strike a disciplinary violation incident report from his record; reinstatement to his UNICOR job; and reimbursement for back pay and UNICOR longevity for a sanction received while at USP Hazelton. On August 19, 2013, the petitioner was granted leave to proceed as a pauper but directed to pay the Five Dollar filing fee. Petitioner paid the required fee on October 10, 2013. By Order entered on October 15, 2013, the respondent was directed to show cause why the petition should not be granted. On November 12, 2013, the respondent filed a Motion to Dismiss, or for Summary Judgment and Response to Show Cause Order. On November 13, 2013, a Roseboro Notice was issued. Petitioner did not file a reply.

### II. Facts

**A. Incident Report No. 2330708**

---

[1] Trusdale has since been transferred to the El Reno FCI in El Reno, Oklahoma. However, jurisdiction is determined at the time an action is filed, and subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction. U.S. v. Edwards, 27 F.3d 564 (4th Cir. 1994).

1

On July 24, 2012, Officer J. Handlin ("Handlin") prepared an Incident Report charging petitioner with Code Violation 203, Threatening Another with Bodily Harm ("Threatening"), and Code Violation 312, Insolence Towards a Staff Member ("Insolence"). The report indicates that at 12:10 pm on July 24, 2012, Handlin was monitoring an inmate "inbound only" move on the compound, when he noticed petitioner among a group of inmates attempting to exit the unit at the time of the inbound move. Handlin approached the door; petitioner stated that he needed to get out to go to Health Services to get his medication. Handlin advised petitioner that it was an "inbound only" move. Petitioner became agitated and replied "Fuck you motherfucker you're a piece of shit." Handlin asked petitioner for his identification, advising that he was writing him an incident report. Handlin and a Special Investigative Services ("SIS") staff member then attempted to exit the unit. Petitioner then stated "fuck you motherfucker you piece of shit you'll be the last one to leave this place." (Dkt.# 17-4 at 1).

A copy of the incident report was delivered to the petitioner at 4:10 p.m. the same day, four hours after the incident took place. (Id.). On July 24, 2012 at 4:10 pm, the investigating officer, D. Prater ("Prater"), advised the petitioner of his right to remain silent. The petitioner responded "All I said was 'fuck you' I did not threaten him." (Id. at 2). On August 7, 2012, Unit Manager Williams ("Williams") advised Warden O'Brien ("O'Brien") that staff had been unable to complete the UDC hearing within the allotted time frame, because the UDC was waiting to receive a memorandum on the Incident Report from a staff member. Accordingly, O'Brien approved the request to continue the processing of Incident Report No. 2330708. (Dkt.# 17-5 at 1). On August 20, 2012, the Unit Discipline Committee ("UDC") held its hearing on Incident Report No. 2330708. (Dkt.# 17-4 at 1). At the conclusion of the evidence, the UDC concluded that petitioner had committed the prohibited offenses. (Id.). It recommended referral to the Discipline Hearing Officer ("DHO") for hearing; along with a 27-day loss of Good Credit Time; a 30-day period of disciplinary segregation (suspended); a 180-day loss of petitioner's UNICOR job; and a 90-day loss of commissary

privileges. (Id.). Petitioner was notified that his charges would be heard by the DHO on August 21, 2012 at 4:45 pm. (Dkt.# 17-6). He was advised that he had the opportunity to call witnesses on his behalf, and also have a staff representative present on his behalf. (Id. and Dkt.# 17-7). Petitioner declined the staff representative, but named a witness "McMahang," who could to testify as to what he said during the confrontation. (Dkt. 17-7). However, after receiving the UDC packet, the DHO at USP Hazelton determined that the facts alleged in Incident Report No. 2330708 did not support any 200-level offense misconduct, but that the remaining 300-level offense charge could be heard at the UDC level. (Dkt.# 17-8).

On September 21, 2012, the UDC reconvened to review the Code 312 offense, Insolence, and found that the greater weight of the evidence supported a finding that petitioner did commit the prohibited offense. (Dkt.# 17-9). Accordingly, petitioner was sanctioned with a 90-day loss of his UNICOR job. (Id.).

### III. Contentions of the Parties

Petitioner's §2241 petition is a nearly-blank court-approved form petition, which has the words "not applicable" repeatedly filled in nearly every available blank,[1] including those stating his each of his grounds for relief. There is no accompanying memorandum of law. Petitioner did attach copies of the administrative remedies he filed, arguing claims related to his Incident Report, some of which are not raised here. His only statement, his claim for relief, on the last page, is:

> I was given an incident report for violating FBOP Policy 312 – insolence towards a staff member. I, however was sanctioned under FBOP 307 refusing to obey an order. I never violated FBOP 307 yet I received punishment for violating FBOP 307 which included a change of housing units, loss of my UNICOR job, D-S time along with other priviledges [sic]. For an act I never committed. I am therefore asking that the incident report be stricken from my record along with reimbursement of back pay which equates to $1,136.55 and <59> months UNICOR longevity.

Dkt.#1 at 8.

---

[1] Petitioner did note, on the first page, that the petition concerned prison disciplinary proceedings and administrative remedies. Otherwise, the petition is completely blank, save the words "not applicable," until the final page where the claim for relief is stated.

The respondent argues that the petitioner was afforded all the due process rights required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974). In addition, the respondent argues that the evidence relied upon by the UDC was sufficient for a finding of guilt in the petitioner's disciplinary hearings. Finally, the respondent notes that the clerical error referencing Code 307 for the charge of Insolence Towards a Staff Member, a violation of Code 312, was irrelevant to the proceedings.

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the

4

speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving

party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## V. Analysis

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq. However, prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974)("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). When a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

> 1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;
>
> 2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;
>
> 3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
>
> 4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or

6

the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

     5. providing impartial fact finders.

Id. at 564-571.

Nonetheless, a disciplinary hearing inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id. at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 454 (1985).

In this case, it is undisputed that the petitioner received all of the due process safeguards delineated in Wolff.

While the copies of petitioner's administrative remedies attached to his petition also include other claims related to timeliness regarding the responses to Incident Report at issue, petitioner did not include them in his petition. While *pro se* petitions are to be liberally construed, as set forth in Haines v. Kerner, 404 U.S. 519 (1972), habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977)(internal quotations omitted). Nevertheless, principles requiring generous construction of *pro se* complaints have their limits; while district courts are to construe *pro se* complaints liberally, they are not required "to conjure up questions never squarely presented to them. District judges are not mind readers." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Therefore, because petitioner's related Incident Report response timeliness claims are not even mentioned in the petition, they will not be given review.

Petitioner's only remaining claim, what is in essence a sufficiency of the evidence claim, alleges that he was falsely sanctioned for an offense he did not commit, i.e., a violation of Code 307, rather than Code 312, for which he received "a change of housing units, loss of my UNICOR job, D-

7

S time along with [loss of] other priviledges [sic]" is unsupported by the record and completely without merit. Even the most cursory review of the record reveals that petitioner was never issued an Incident Report for violating Code 307, Refusal to Obey an Order, let alone sanctioned for Code 307. The only mention of violating Code 307 in the record was in a typographical error, made three and a half months after the incident in a November 9, 2012 response by Warden O'Brien to one of petitioner's grievances, where O'Brien correctly stated the violation committed was Insolence, but inadvertently appended the incorrect code number to it,[2] and in petitioner's subsequently-filed administrative remedies, where he seizes on the clerical error to repeatedly allege he was falsely sanctioned.

Moreover, while it is clear petitioner received proper notice of the Code 312 violation, even if he had not, his claim would still fail. Twenty-Eight C.F.R. § 541.17(f) authorizes the DHO to find an inmate has committed the prohibited act charged and/or a similar prohibited act if is reflected in the incident report. See Castellanos v. Snyder, 2000 WL 1434590 *1-2 (6th Cir. Sept. 21, 2000); Yates v. Young, 772 F.2d 909, (6th Cir. 1985)(unpublished)("Although the stated charge was possession of a sharpened instrument, plaintiff was notified that the charge was based on the discovery of this weapon in his cell."). The acts described in Incident Report No. 2330708, issued and delivered to petitioner on July 24, 2012, *inter alia,* clearly advise petitioner that he was charged with Insolence, a Code 312 violation, not a Code 307 violation, sufficient to give petitioner notice that he was correctly charged with Insolence. This is further evidenced in the August 24, 2012 decision by the DHO, stating that the facts set forth in Incident Report No. 2330708 did not support the higher severity Code 203 charge, but did support the "Moderate Severity" Code 312 charge.[3] Even though the DHO could have made a determination based on the facts contained in the original incident report, instead, she sent the report back to the UDC to hear the Code 312 offense. As that

---

[2] Dkt.# 3-2 at 14 and Dkt.# 17-18 at 2 - 3.

[3] Dkt.# 17-8.

charge was unchanged from the original July 24, 2012 Incident Report 2330708 he received, petitioner actually had notice of the Code 312 offense for two months prior to the September 21, 2012 UDC hearing.

Although petitioner was originally charged with Threatening, Code 203, and Insolence, Code 312, while petitioner[4] denied making any threats toward Handlin, he admitted that he had in fact cursed at him,[5] providing a valid basis for a finding by the DHO that petitioner showed insolence toward a staff member. Therefore, although petitioner was not found guilty of Threatening, he conceded that he was guilty of Insolence, a violation of Code 312.[6]

Because petitioner admitted to the charges of the Incident Report, he cannot show that false charges were brought against him; that he was found guilty without sufficient evidence; was improperly sanctioned; or that he is entitled have the disciplinary violation incident report struck from his record. The BOP admitted its inadvertent clerical error; the sole sanction petitioner received was 90 days loss of UNICOR job time[6] for the finding of Insolence, thus, petitioner cannot show any resultant injury.

In conclusion, the record before the Court clearly establishes that although the petitioner never alleged his due process rights were violated, petitioner was provided due process as contemplated by Wolff. Not only was the petitioner provided with the due process rights required by

---

[4] The record is unclear as to whether "McMahang," the witness petitioner identified ever actually testified; however, because petitioner admitted the offense, the point is moot.

[5] After being advised he had the right to remain silent, petitioner stated "All I said was 'Fuck you" I did not threaten him." (Dkt.# 17-4 at 2).

[6] Code 312 is a prohibited act in the moderate severity category level and carries the same penalty as Code 307, Refusing to Obey an Order. See Program Statement ("P.S.") 5270.09, Pages 49 – 53. Every prisoner who arrives at a federal institution is given Notice of the Inmate Discipline Program promptly upon arrival, including a Summary of the Inmate Discipline System (Appendix B); Inmate Rights and Responsibilities (Appendix C); and Prohibited Acts and Available Sanctions (Table 1). Receipt of these documents must be noted on the intake screening form and maintained in the inmate's central file. The receipt is kept in the inmate's central file. P.S. 5270.09, ¶7 at page 5. In addition, a violation of either Prohibited Act 312 or 307 carries the same threat to security, and requires the same expenditure of additional resources, which justifies the sanctions actually imposed. Thus, the petitioner could have suffered the same fate regardless of whether he was charged with violating Code 307 or Code 312.

[6] See Dkt.# 17-9.

9

Wolff, because petitioner admitted to committing the offense, he corroborated the findings made by the DHO in the disciplinary hearings, that petitioner violated the Disciplinary Code as charged. Finally, it is apparent from the record that petitioner was well aware that he was never sanctioned for committing a violation of Code 307, long before he ever filed this case, thus his claim not only fails to state a claim upon which relief can be granted, but it is frivolous as well.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be **DENIED as frivolous and for failure to state a claim,** and **DISMISSED with prejudice**.

Any party may file, **within fourteen (14) days** after being served with a copy of this Recommendation, **or by April 16, 2014,** with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: April 2, 2014

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE